IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROSA LOPEZ

      v.                  :   Civil Action No. DKC 13-2406

BMA CORP.

## MEMORANDUM OPINION

Presently pending and ready for review in this employment discrimination case is the motion to dismiss filed by Defendant BMA Corporation d/b/a Ledo's Pizza & Pasta. (ECF No. 21). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I.  Background

The following facts are either alleged in the amended complaint, evidenced by documents referenced or relied upon in the complaint, or are matters of public record of which the court may take judicial notice.[1]

---

[1] "Although as a general rule extrinsic evidence should not be considered at the 12(b)(6) stage," the court may consider such evidence where the plaintiff has notice of it, does not dispute its authenticity, and relies on it in framing the complaint. *Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2002); *see also Douglass v. NTI-TSS, Inc.*, 632 F.Supp.2d 486, 490 n.1 (D.Md. 2009). Here, Defendant

Plaintiff Rosa Lopez brings this suit as parent and next friend of her daughter, LL.[2] LL is a female of Latin American descent, specifically Salvadorian. Defendant BMA – doing business as Ledo's Pizza & Pasta – is a restaurant in Temple Hills, Maryland.

On August 15, 2011, LL began work as a server and cashier at Defendant's restaurant. She worked Thursdays, Fridays, and Saturdays from either 5:00 pm to 10:00 pm (Thursday) or 4:00 pm to 11:00 pm (Friday and Saturday). Soon after beginning work, LL was told by her manager Farine (no last name given) that she and her co-worker Ingrid (no last name given) were not allowed to speak Spanish while at the restaurant. LL complained to her mother Rosa, her immediate supervisor. Rosa then complained to the head of the restaurant, Bobby Syed. Mr. Syed – a Bangladeshi – replied that Spanish is not a real language and that Spanish shall not be spoken anywhere in the restaurant, including the areas not patronized by customers. This "no-

has attached Plaintiffs' Charge of Discrimination form jointly submitted to the Prince George's County Human Relations Commission and the Equal Employment Opportunity Commission. This filing was specifically referenced in the amended complaint. (ECF No. 12 ¶ 55). In the opposition papers, Plaintiff does not challenge the authenticity of this document. Thus, the court may consider it in resolving the pending motion to dismiss.

[2] As LL is a minor, she will be referred to only by her initials in accordance with Federal Rule of Civil Procedure 5.2(a). Alternatively, she may be referred to as "Plaintiff."

Spanish" policy was enforced for the entirety of LL's employment. Previously, Spanish had only ever been spoken in employee-only areas. Following enactment of this policy, Defendant's owners and managers frequently conversed in a dialect of Bangladeshi, their native language. (ECF No. 11 ¶¶ 4-10).

LL claims that she was subjected to further differential treatment because of her nationality. On or around June 2012, LL – who possessed a learners' permit - was at her car after her shift had concluded. Defendant's owner saw her and said, "I'm going to call the police and they are going to lock you up!"[3] The next day, Defendant's owner told Rosa that he was going to call the police to "lock her up" because she was an irresponsible parent for letting her daughter drive. LL alleges that these statements were motivated by a belief that all Hispanics are undocumented and could not have drivers' licenses. (*Id.* ¶¶ 11-12).

The alleged differential treatment also took other forms. LL was charged ten dollars for each of her work shirts, but her Bangladeshi co-workers were not so charged. On May 5, 2012, Mr. Syed asked LL if she had any Cinco de Mayo plans which she must be celebrating because her father is Mexican. After LL

---

[3] It is unclear whether "Defendant's owner" is referring to Mr. Syed.

corrected Mr. Syed that her father is not Mexican, Mr. Syed called LL a racist in front of other employees. LL was also reprimanded by Mr. Syed in front of the entire workforce for not helping a customer pay when her Bangladeshi co-workers were not so reprimanded for engaging in similar behavior. (*Id.* ¶¶ 14-17).

LL was also allegedly subjected to sexual harassment. The primary perpetrator of the sexual advances was a twenty-six year old co-worker named Mohammad Mohsin. LL's first interaction with Mr. Mohsin came after she had been working at Ledo's for several months. The two were both servers, often on the same shifts. The sexual harassment began on the first day LL and Mr. Mohsin started working together. For over a month, Mr. Mohsin repeatedly made advances toward LL, including telling her that "Each day you are looking more sexy for me"; asking for her phone number; repeatedly inviting her to his house; frequently telling her that he wanted the two of them to be close; that he wanted her to be his girlfriend; and always seeming to find himself in close proximity to LL. LL repeatedly rebuffed his advances, reminding him that she was only sixteen years old. This did not placate Mr. Mohsin and the harassment continued as described. (*Id.* ¶¶ 19-35).

LL complained to her supervisors – including Mr. Syed – about Mr. Mohsin multiple times, telling them that she did not

like working with Mr. Mohsin, his sexual advances made her uncomfortable, and his compliments were inappropriate. LL states that she spoke with the owner of Ledo's five or six times. But Mr. Syed and the other supervisors did nothing to reign in Mr. Mohsin. On July 30, 2012, LL again met with Ledo's owner and reiterated Mr. Mohsin's behavior, how she found it unacceptable and requested that Defendant take action to end it. Defendant did not do anything in response. To LL's knowledge and belief, Defendant never spoke with Mr. Mohsin about his behavior. Defendant never told LL what was done to fix the problem. Mr. Syed modified LL's work schedule, but in a manner that exacerbated the problem: instead of being a server on Thursday and Friday and a cashier on Saturday, now she was working all three days as a server with Mr. Mohsin. (*Id.* ¶¶ 36-43).

Mr. Mohsin was not happy with LL speaking with their management. When the two worked together as servers, he tried to take all the desirable tables instead of following the restaurant's policy of alternating table assignments. LL confronted Mr. Mohsin about this, to which he responded that as the senior server she needed to listen to him. These actions were done with the knowledge and endorsement of Ledo's ownership and management. (*Id.* ¶ 45).

Furthermore, Defendant would micromanage LL and arbitrarily discipline LL. Mr. Mohsin would complain about LL's performance to Mr. Syed, who would always give credence to Mr. Mohsin's complaints, yelling at LL in front of staff and customers. By contrast, Mr. Syed would never take action against Mr. Mohsin when LL complained. Mr. Syed allowed Mr. Mohsin to act as LL's supervisor, allowing Mr. Mohsin to dictate which tables she would service. (*Id.* ¶¶ 46-49).

The work environment caused LL to feel unsafe, which manifested itself in the form of anxiety, nervousness, headaches, shaking, trouble keeping food down, and general sickness. LL spoke to a nurse who referred her to a therapist. LL worked with the therapist for one month, at which point the therapist advised LL to get legal assistance. On August 3, 2012, LL's employment ended with Defendant. She was not terminated, but alleges that her resignation was not voluntary; instead it was forced upon her by the hostile work environment. (*Id.* ¶¶ 50-54).

## II. Procedural History

On or about December 11, 2012, LL filed a charge with the Prince George's County Human Relations Commission ("HRC") which was cross-filed with the EEOC. LL alleged discrimination based on sex and national origin that was a continuing action beginning on August 15, 2011 through August 3, 2012. She

provided three instances of alleged discrimination: (1) for the entirety of her employment, Ledo's owner prohibited her and other Spanish speaking employees from speaking Spanish because of their national origin; (2) from July 1, 2012 to August 3, 2012, a male co-worker regularly subjected LL to a hostile work environment that Ledo's owners had knowledge of and failed to take appropriate action because of LL's sex; and (3) LL was constructively discharged because she could no longer work in a sexually hostile environment. (ECF No. 21-2).

On April 24, 2013, Plaintiff filed a complaint in the Circuit Court for Prince George's County, Maryland for alleged violations of county employment discrimination laws. On July 19, 2013, Defendant filed a motion to dismiss. On August 5, 2013, Plaintiff filed an amended complaint. The amended complaint has two counts: employment discrimination on the basis of sex and national origin in violation of: (1) Prince George's County Code § 2-222; and (2) Title VII, 42 U.S.C. § 2000e, *et seq.* (ECF No. 11). Defendant filed its notice of removal on August 16, 2013, citing federal question jurisdiction, 28 U.S.C. § 1331, over the Title VII claim and supplemental jurisdiction, 28 U.S.C. § 1367, over the state law claim. (ECF No. 1). On August 26, 2013, Defendant filed a motion to dismiss. (ECF No. 21). Plaintiff opposed the motion on September 12, 2013 (ECF

No. 22), and Defendant replied on September 30, 2013 (ECF No. 23).

### III. Standard of Review

The arguments raised by Defendant in its motion to dismiss – lack of subject matter jurisdiction and failure to state a claim – implicate different standards of review. First, Defendant's motion to dismiss for lack of subject matter jurisdiction is governed by Federal Rule of Civil Procedure 12(b)(1). Generally, "questions of subject matter jurisdiction must be decided 'first, because they concern the court's very power to hear the case.'" *Owens-Illinois, Inc. v. Meade*, 186 F.3d 425, 442 n.4 (4th Cir. 1999) (*quoting* 2 James Wm. Moore, et al., Moore's Federal Practice § 12.30[1] (3[d] ed. 1998)). The Plaintiff always bears the burden of proving that subject matter jurisdiction properly exists in federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). In considering a Rule 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans,* 166 F.3d at 647. The court should grant such a motion "only if the material jurisdictional facts are not in dispute and the moving party is

entitled to prevail as a matter of law." *Richmond,* 945 F.2d at 768.

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (*citing Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). In evaluating the complaint, unsupported legal allegations need not be accepted. *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989). Legal conclusions

couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## IV.  Analysis

The Amended Complaint does not identify with any precision the employment actions that underlie the claims.  Defendant assumes that allegations in the factual section were intended as separate causes of action.  Defendant has divided the allegations into (1) driving incident, (2) fee for work shirts, (3) Cinco de Mayo remark, (4) rescheduling, (5) retaliation for complaining, (6) "English only" rule, (7) Sexual Harrassment Hostile Environment, and (8) constructive discharge. Plaintiff's response to the motion does not directly take issue with those assumptions.

### A.    Lack of Subject-Matter Jurisdiction for Failure to Exhaust Administrative Remedies

Defendant contends that the court should dismiss the claims implicated in paragraphs 11-12, 14-17, 42-43, and 46-52 of the amended complaint because Plaintiff did not include these claims in her charge form filed with HRC and EEOC.  These paragraphs cover the driving incident; fee for work shirts; Cinco de Mayo altercation; rescheduling; and retaliation for complaining.

"[F]ederal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013). The burden of proving subject-matter jurisdiction rests with the plaintiff. *See Evans*, 166 F.3d at 647. The United States Court of Appeals for the Fourth Circuit has explained that

> [i]n any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge. *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 962-63 (4th Cir. 1996) ("The allegations contained in the administrative charge of discrimination generally operate to limit the scope of any subsequent judicial complaint."). If the plaintiff's Title VII claims "exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred." *Chacko [v. Patuxent Inst.]*, 429 F.3d [505,] 506 [(4th Cir. 2005)] (*quoting Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995).

*Balas*, 711 F.3d at 407-08; *see also Evans*, 80 F.3d at 963 ("Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained" in a subsequent lawsuit).

Consistent with these principles, "a claim in formal litigation will generally be barred if the EEOC charge alleges

discrimination on one basis, such as race, and the formal litigation claim alleges discrimination on a separate basis, such as sex." *Jones v. Calvert Grp., Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). Likewise, where the EEOC charge and the complaint allege the same type of claim (*e.g.*, race-based discrimination), the formal litigation claim may still be barred if the central factual allegations supporting it were not raised in the EEOC charge. *See, e.g., Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (national origin-based discrimination claim barred where "administrative charges reference different time frames, actors, and discriminatory conduct than the central factual allegations in [her] formal suit"); *Jones v. Republic Servs.*, No. AW-10-cv-1999, 2011 WL 6000761, at *2-3 (D.Md. Nov. 29, 2011) (where EEOC charge alleged race-based disparate treatment based on the plaintiff's suspension and termination, claim for race-based disparate treatment based on employer's refusal to grant an alternative work schedule was barred). "At the same time, however, if the factual allegations in the administrative charge are reasonably related to the factual allegations in the formal litigation, the connection between the charge and the claim is sufficient." *Chacko,* 429 F.3d at 509; *see also Sydnor v. Fairfax Cnty., Va.,* 681 F.3d 591, 595 (4th Cir. 2012) (although the administrative charge and the judicial complaint alleged different facts in

support of a disability discrimination claim, they involved the same place of work, the same actor, the same type of discrimination, and the same disability).

Here, Plaintiff's EEOC charge characterizes the discrimination as based on national origin and sexual harassment, the latter of which rose to the level of a hostile work environment and eventually led to LL's constructive discharge. She provides three instances of alleged discrimination: the no-Spanish policy which existed throughout LL's employment; the sexual harassment perpetrated by a co-worker from July 1, 2012 to August 3, 2012 that Defendant's owners did not adequately respond to; and LL's constructive discharge because of the sexually hostile work environment on August 3, 2012. (ECF No. 21-2). LL argues that the driving incident and fee for work shirts were exhausted administratively as they relate directly to her claim of national origin discrimination and are examples of Defendant treating LL differently because of her national origin. The Cinco de Mayo incident can also be considered because it is an example of the hostile work environment LL was subjected to.

LL's arguments are unconvincing. The sole instance of alleged national origin discrimination listed in Plaintiff's EEOC charge is the existence of the no-Spanish policy for the entirety of LL's employment. No mention was made of the parking

lot incident, the $10.00 charge, or the Cinco de Mayo confrontation. Those events are not reasonably related to the alleged existence of the no-Spanish policy nor could they be expected to emerge from a reasonable investigation of the existence of such a rule. To the extent that Plaintiff argues that these three incidents are appropriately considered as part of the hostile work environment LL was subjected to, Plaintiff's EEOC charge only refers to the hostile work environment based on her sex, specifically sexual harassment. Furthermore, she claims that her constructive discharge was based on her "sexually hostile work environment." No mention is made of hostility because of her national origin. "[T]he allegation of a discrete act or acts in an administrative charge is insufficient when the plaintiff subsequently alleges a broader pattern of misconduct." *Chacko*, 429 F.3d at 509; *see also Dennis v. Cnty. of Fairfax*, 55 F.3d 151, 153, 156 (4th Cir. 1995) (employee who filed an EEOC charge "alleging disparate disciplinary treatment" based on one incident did not exhaust his administrative remedies before filing a Title VII claim based on the employer's "hiring, promotion, and training" practices). Earlier this year, the Fourth Circuit, while recognizing that EEOC charges "must be construed with utmost liberality," held that courts "are not at liberty to read into administrative charges allegations they do not contain.

Instead, persons alleging discrimination have a different form of recourse if they determine that their initial charge does not read as they intended: they may . . . file an amended charge with the EEOC. *See* 29 C.F.R. § 1601.12(b)." *Balas*, 711 F.3d at 408. Thus, any claim that LL was subjected to a hostile work environment because of her national origin was not administratively exhausted. In terms of national origin discrimination, this court has subject-matter jurisdiction only over the no-Spanish policy.

Defendant also argues that LL has failed to exhaust administratively with regards to paragraphs 42-43 and 46-50 of Plaintiff's amended complaint. These portions of the complaint allege that Mr. Syed – after being told by LL of Mr. Mohsin's behavior – retaliated against her by changing her work assignments and arbitrarily disciplining her. Defendant argues that these allegations constitute a claim of retaliation which was not alleged in the EEOC charge nor did Plaintiff check the box for "retaliation" as one of the bases of discrimination she suffered.

Plaintiff, in response, disagrees with Defendant's characterization of these paragraphs. She contends that this portion of the complaint should not be read to attempt to make out a claim for retaliation as no such claim was alleged in either the EEOC charge or the amended complaint. Instead, these

paragraphs relate to the sexual harassment LL endured and demonstrate that LL's management had knowledge of Mr. Mohsin behavior and failed adequately to address it.

LL has exhausted administratively these claims. Her EEOC charge states that a co-worker subjected her to a hostile work environment and Defendant's owners "whom [sic] had knowledge of the sexual harassment failed to take appropriate action and immediately eliminate the sexual harassment." Furthermore, LL charged Defendant with constructive discharge because she "could no longer work [in a] sexually hostile work environment." LL was telling the EEOC that Mr. Mohsin sexually harassed her and Defendant's owners knew of this issue. Their failure to take action created a hostile work environment which eventually rose to such a level that LL had no choice but to leave. A reasonable investigation of LL's claims of sexual harassment and hostile work environment would have led to inquiries regarding what Defendant's management knew, when they knew it, and what they did about it when they became aware of it. As will be discussed in greater detail below, one element of a claim for sexual harassment based on a hostile work environment is that there was some basis for imposing liability on the employer. *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 331 (4th Cir. 2003). A reasonable investigation into LL's EEOC charge would have been expected to include whether her management was

informed of the sexual harassment and any actions they took or did not take in response. Consequently, the allegations in paragraphs 42-43 and 46-50 of Plaintiff's amended complaint were exhausted administratively and this court has subject-matter jurisdiction over them as part of the hostile environment claim.

### B. Timeliness of Plaintiff's Claims

Defendant next contends that the claim concerning the no-Spanish policy is untimely.[4] Title VII requires a plaintiff to file an EEOC charge within a prescribed limitations period. 42 U.S.C. § 2000e-5(e)(1). In deferral states such as Maryland, that limitations period is 300 days from the date of the allegedly discriminatory act. *Id.*[5] "Courts strictly adhere to these time limits and rarely allow equitable tolling of limitations periods." *Khoury v. Meserve,* 268 F.Supp.2d 600, 606 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).

Plaintiff's charge was filed on December 11, 2012, meaning that only those discriminatory acts which occurred within 300 days of that date are timely filed. Defendant argues that LL's complaint in regard to the no-Spanish policy is threadbare and

---

[4] Defendant also argues that the fee for work shirts is untimely. Because that claim was not exhausted administratively, this court does not have subject-matter jurisdiction to consider the timeliness of this claim.

[5] A "deferral state" is one that has its own state or local agency with authority to grant or seek relief from employment discrimination or to institute criminal proceedings on behalf of the alleged victim. 42 U.S.C. § 2000e-5(e)(1).

devoid of such critical details as to who, when, and how Defendant enforced this alleged policy. According to Defendant, there is nothing in the amended complaint to show that the no-Spanish policy was implemented or enforced within the 300 days preceding LL's December 11, 2012 filing with the EEOC.

Plaintiff acknowledges the 300-day time limit but contends that the no-Spanish policy is well within that limit because it was a policy that was in place throughout LL's employment, up to and including her last day of employment on August 3, 2012. This argument is likely an attempt to invoke the "continuing violation" theory, which "allows for consideration of incidents that occurred outside the time bar when those incidents are part of a single, ongoing pattern of discrimination." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007) (*citing Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 118 (2002)). Such a theory only applies, however, when an employee asserts a hostile work environment claim. *Id.; see also Szedlock v. Tenet*, 61 F.App'x 88, 93 (4th Cir. 2003) ("The Supreme Court's ruling in [*Morgan*] makes clear that unless the plaintiff alleges a hostile work environment [claim] . . . each instance of discrimination is a discrete act." Otherwise, when a plaintiff alleges disparate treatment, she may only proceed and recover on deliberate discrimination that occurred within the limitations period, *Lewis v. City of Chicago, Ill.*, 560 U.S. 205, 214-215

18

(2010), although she is not barred from using prior acts as background evidence in support of a timely claim, *Morgan*, 536 U.S. at 113; *see also id.* at 114 (rejecting the concept of "serial violations," *i.e.*, "so long as one act falls within the charge filing period, discriminatory and retaliatory acts that are plausibly or sufficiently related to that act may also be considered for the purposes of liability.").

There is some indication in those portions of the complaint over which the court has subject-matter jurisdiction that Plaintiff intends to bring a hostile work environment claim on the basis of national origin. (*See* ECF No. 11 ¶ 56 ("Defendant has engaged in unlawful employment practices by allowing co-workers to subject LL to sexual harassment and ethnicity/national origin harassment that altered the terms and conditions of her employment and created a hostile work environment.")). In this instance, the alleged existence of a discriminatory policy does not fit comfortably into the category of "discrete acts" which the Supreme Court of the United States has said includes "termination, failure to promote, denial of transfer, [and] refusal to hire." *Morgan*, 536 U.S. at 114. As discussed in the preceding section, however, Plaintiff's administrative charge made no allegation of a hostile work environment on the basis of national origin, but only on the basis of sex. *See Balas*, 711 F.3d at 408 (courts are "not at

liberty to read into administrative charges allegations they do not contain."); *Evans*, 80 F.3d at 962-63 (finding allegations of sexual harassment in the complaint were not "reasonably related" to EEOC charge's allegations of discrimination based on gender). Plaintiff's muddled complaint and other filings in this court do not disabuse this view. Consequently, the discriminatory act – here, the no-Spanish policy – must proceed on a theory of disparate treatment.[6] Such treatment must have occurred within 300 days of the December 11, 2012 EEOC charge. Moreover, merely present effects of past actions cannot lead to Title VII liability for claims requiring discriminatory intent, including disparate treatment claims such as the no-Spanish policy. *Morgan*, 536 U.S. at 113; *Delaware State College v. Ricks*, 449 U.S. 250, 258 (1980) ("the proper focus [for calculating the limitations period] is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful."); *Cherosky v. Henderson*, 330 F.3d 1243, 1248 (9th Cir. 2003) ("'if the mere existence of a policy is sufficient to constitute a continuing violation, it is difficult to conceive of a circumstances in which a plaintiff's claim of an unlawful

---

[6] Plaintiff's opposition brief suggests that she is operating under this theory, responding to Defendant's argument that she has failed to state a claim for national origin discrimination by evaluating her case against the elements of a *prima facie* case of disparate treatment. (*See* ECF No. 22, at 15).

employment policy could be untimely.'" (*quoting Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 533 (5th Cir. 1986)).

Plaintiff's EEOC charge states that Defendant subjected her to the no-Spanish policy throughout the entirety of her employment, specifically August 15, 2011 to August 3, 2012. LL's complaint states that she was first instructed not to speak Spanish at Ledo's "soon after LL started working for Defendant," and that it "was enforced through the entirety of LL's employment, including her last day of employment, August 3, 2012." (ECF No. 11 ¶¶ 6 and 9). It will be assumed for the purposes of this motion that Plaintiff has sufficiently pled that the no-Spanish policy was enforced against her at least once within 300 days of her EEOC filing.

**C.  Failure to State a Claim**

**1.  National Origin Discrimination**

While a plaintiff pleading a claim of disparate treatment does not need to *establish* a *prima facie* case under *McDonnell Douglas* to survive a motion to dismiss, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002), she must plead facts sufficient to state each element of the asserted claim, *Bass v. E.I. Dupont De Nemours & Co.*, 324 F.3d 761, 765-65 (4th Cir. 2003). A disparate treatment claim can be pled through either direct evidence of discrimination or the familiar *McDonnell Douglas* framework: (1) Plaintiff is a member of a protected class; (2)

her job performance was satisfactory; (3) she suffered an adverse employment action; and (4) her employer treated similarly situated employees outside her protected class more favorably. *See Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd on other grounds*, --- U.S. ---, 132 S.Ct. 1327 (2012). Plaintiff does not contend that she has pled direct evidence. Defendant's only point of contention is that Plaintiff has failed to plead sufficiently the adverse employment action element.

An adverse employment action is "a discriminatory act that 'adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment.'" *Holland v. Washington Homes, Inc.,* 487 F.3d 208, 219 (4th Cir. 2007) (*quoting James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004)). Where, as here, an employee is not discharged, such actions typically take the form of a decrease in compensation, demotion, or loss of an opportunity for promotion. *See James*, 368 F.3d at 376.

Plaintiff completely fails to engage this element of the *prima facie* case, seemingly refusing to acknowledge it. She contends that there are only three elements to the *prima facie* case: (1) membership in a protected class; (2) conduct similar to an employee outside the protected class; and (3) treatment different than the employee outside the protected class. Plaintiff is not without authority for her proposition that a

Plaintiff must only plead elements one, two, and four, but that authority – *Vazquez v. Maryland Port Admin.*, 937 F.Supp. 517 (D.Md. 1995) – is a dated case from this district. More recent binding precedent dictates that an adverse employment action is one element of a disparate treatment claim. *See, e.g., Young v. United Parcel Serv., Inc.*, 707 F.3d 437, 449-50 (4th Cir. 2013); *James*, 368 F.3d at 375 ("Regardless of the route a plaintiff follows in proving a Title VII action, the existence of some adverse employment action is required."). Not surprisingly, because Plaintiff fails to recognize or acknowledge this element, she makes no contention that the no-Spanish policy resulted in such an adverse employment action. While Plaintiff contends that she suffered a constructive discharge, and a constructive discharge is a form of an adverse employment action, *Boone v. Goldin*, 178 F.3d 253, 255-56 (4th Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006), she does not argue that the no-Spanish policy contributed to that constructive discharge, instead confining her allegedly forced resignation to the circumstances surrounding the sexual harassment she allegedly suffered. (*See* ECF No. 22, at 17-18). Plaintiff does not contend that the no-Spanish policy resulted in a negative effect on her salary, benefits, job title, responsibilities, or promotion opportunities. *See James*, 368 F.3d at 375-76.

Consequently, Plaintiff fails to state a claim of disparate treatment on the basis of national origin.[7]

**2.    Sexual Harassment Hostile Work Environment**

Plaintiff claims harassment on the basis of sex, leading to a hostile work environment, a form of prohibited discrimination. *See Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66-77 (1986). To establish a *prima facie* case, Plaintiff must show that: (1) she was subjected to unwelcome conduct; (2) the unwelcome conduct was based on sex; (3) the conduct was sufficiently

---

[7] Defendant's characterization of its alleged policy as "English-only" is incorrect.  It is better characterized as a "no-Spanish" policy as Plaintiff alleges that Bangladeshi employees were free to speak in their native language. Consequently, Defendant's reliance on *Long v. First Union Corp.*, 894 F.Supp. 933 (E.D.Va. 1995), *aff'd*, 86 F.3d 1151 (4th Cir. 1996) (table decision), is misplaced.    There, a group of Hispanic employees challenged their employer's policy that English be spoken by *all* its employees.    *Id.* at 938.    While an "English-only" rule may not violate Title VII if applied to all employees, the policy here, by contrast, was allegedly applied selectively to the Spanish speakers.  If a plaintiff suffered an adverse employment action because of a No-Spanish policy, such a policy "could support an inference of intentional discrimination on the basis of national origin."  *Velasquez v. Goldwater Mem'l Hosp.*, 88 F.Supp.2d 257, 263 (S.D.N.Y. 2000); *see also Maldonado v. City of Altus*, 433 F.3d 1294, 1304 (10th Cir. 2006) (noting that "English-only policies are not always permissible; each case turns on its facts"); *Garcia v. Spun Steak Co.*, 998 F.2d 1480, 1489 (9th Cir. 1993) (refusing to "foreclose the prospect that in some circumstances English-only rules can exacerbate existing tensions, or, when combined with other discriminatory behavior, contribute to an overall environment of discrimination"); *Lopez v. Flight Servs. & Sys., Inc.*, 881 F.Supp.2d 431, 440 (W.D.N.Y. 2012) ("an employer may require employees to speak English where there is a legitimate reason for doing so, but it may not forbid employees from speaking their native tongues if the reason is because of discriminatory animus toward the employee's national origin.").

pervasive or severe to alter the conditions of employment and create a hostile work environment; and (4) some basis exists for imputing liability to the employer. *See Smith v. First Union Nat'l Bank*, 202 F.3d 234, 241-42 (4th Cir. 2000). The parties do not dispute that Mr. Mohsin's alleged conduct was unwelcome or because of LL's sex. Instead, Defendant argues that LL has failed to plead adequately that Mr. Mohsin's conduct was sufficiently severe or pervasive and that Mr. Mohsin's conduct is imputable to Defendant.

In terms of the third prong, the Supreme Court explained that in order to be actionable under Title VII, a sexually objectionable environment must be both objectively and subjectively offensive – *i.e.*, one that a reasonable person would find hostile or abusive and one that the plaintiff found to be so. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). The Court further instructed that the determination of the sufficiency of an environment's hostility or abusiveness should be made by considering all circumstances, including the "frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* at 23. Simple teasing, offhand comments, and isolated incidents (unless extremely serious), do not qualify as having an effect on the "terms and

conditions of employment." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 82 (1998).

Here, Plaintiff's complaint alleges that Mr. Mohsin – a twenty-six year old male – would repeatedly make sexual advances to LL, a sixteen-year old female. Mr. Mohsin told LL that "each day you are looking more sexy for me," and wanted her to be his girlfriend; he invited himself over to her house and asked for her phone number multiple times. As a result of this, LL suffered from anxiety, nervousness, headaches, shaking, trouble keeping food down, and sought psychological therapy. LL's allegations are sufficient to state a claim that the alleged discriminatory conduct she suffered was frequent, severe, and objectively offensive.

Defendant also argues that it cannot be held liable for Mr. Mohsin's alleged harassment. Employer liability can be established in two ways: negligence or vicarious liability, depending on the relationship between the alleged harasser and the victim. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998). "In a case where an employee is sexually harassed by a coworker, the employer may be liable in negligence if it knew or should have known about the harassment and failed to take effective action to stop it." *Ocheltree*, 335 F.3d at 333-34. By contrast, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile

environment created by a supervisor with immediate (or successively higher) authority over the employee." *Ellerth*, 524 U.S. at 765. LL alleges that Mr. Mohsin was the harasser and does not contend that he is LL's supervisor.

Plaintiff's complaint states that she complained to her supervisors about Mr. Mohsin's behavior many times and met with them on this matter five or six times. Although she is only precise on the date of one meeting – July 30, 2012 – she repeatedly states that Mr. Syed did nothing to correct the issue and that Mr. Mohsin's behavior continued after she informed Mr. Syed. (*See* ECF No. 11 ¶¶ 36, 38). According to LL's knowledge and belief, Defendant never spoke with Mr. Mohsin about the issue, nor did Defendant follow up with LL to see that the problem had been resolved or explain what it had done. (*Id.* ¶ 40). According to the complaint, Defendant's actions, if anything, perpetuated Mr. Mohsin's harassment by adjusting LL's work assignment to put her in closer proximity to Mr. Mohsin. (*Id.* ¶ 43). Based on her allegations, Plaintiff has sufficiently pled the final element of her *prima facie* case. Accordingly, Defendant's motion to dismiss Plaintiff's claim of discrimination in the form of sexual harassment hostile work environment will be denied.

### 3. Constructive Discharge

LL also alleges that her employment with Defendant ended on August 3, 2012 not of her own accord, but as the result of a "constructive discharge" caused by "Defendant's wholesale allowance of an ongoing severe and pervasive hostile work environment." (ECF No. 11 ¶ 54). "Under the constructive discharge doctrine, an employee's reasonable decision to resign because of unendurable working conditions is assimilated to a formal discharge for remedial purposes." *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004). When the constructive discharge claim arises in the context of a hostile-environment lawsuit, the plaintiff must go beyond merely establishing a hostile work environment, but "must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. "[H]arassment so intolerable as to cause a resignation may be effected through co-worker conduct, unofficial supervisory conduct, or official company acts." *Id.* at 148. A prevailing constructive discharge plaintiff is entitled to all damages available for formal discharge, including backpay and, in some circumstances, frontpay. *Id.* at 147 n.8.

The Fourth Circuit has held that "an employee is constructively discharged if an employer deliberately makes the working conditions of the employee intolerable in an effort to

induce the employee to quit." *Whitten v. Fred's, Inc.*, 601 F.3d 231, 248 (4th Cir. 2010), *abrogated on other grounds by Vance v. Ball State Univ.*, 133 S.Ct. 2434 (2013) (quotation marks and citation omitted). A constructive-discharge plaintiff must therefore allege and prove two elements: (1) deliberateness of the employer's actions and (2) intolerability of the working conditions. *Id.*

> "Intolerability" is not established by showing merely that a reasonable person, confronted with the same choices as the employee, would have viewed resignation as the wisest or best decision, or even that the employee subjectively felt compelled to resign; presumably every resignation occurs because the employee believes that it is in his best interest to resign. Rather "[i]ntolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt *compelled* to resign," *Bristow [v. Daily Press, Inc.*], 770 F.2d [1251] at 1255 [(4th Cir. 1985)] (emphasis added) — that is, whether he would have had *no choice* but to resign.

*Blistein v. St. John's Coll.,* 74 F.3d 1459, 1468 (4th Cir. 1996), *overruled on other grounds by Oubre v. Entergy Operations, Inc.*, 522 U.S. 422 (1998) (emphasis in original).

Deliberateness can be shown "by actual evidence of intent by the employer to drive the employee from the job, or circumstantial evidence of such intent, including a series of actions that single out a plaintiff for differential treatment. *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir. 1993) (*citing*

*Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir. 1981) (stating that the "fact that employees were treated identically rebuts any inference" of constructive discharge)).

At this initial stage of the proceedings, Plaintiff has met her burden. LL alleges that she told Defendant's management numerous times of Mr. Mohsin's harassing behavior and they did nothing to address it. What action they did take actually made LL's situation worse, by changing LL's assignments so that she would have greater interaction with Mr. Mohsin. All the while, Mr. Mohsin's previously described harassment continued unabated. LL also alleges that Defendant purposefully made her working conditions worse, by arbitrarily disciplining her and calling her out for supposed infractions in front of staff and customers. According to LL, Defendant would always discipline her when Mr. Mohsin brought supposed issues with her performance to management's attention, but would not do likewise when the roles were reversed and LL was raising issues regarding Mr. Mohsin. Given these allegations, Plaintiff has pled sufficient facts to state a claim that she was subject to discrimination on the basis of sex in the form of a hostile work environment that reached such a level that she was constructively discharged from her position.

## C.   Damages

While not necessary to dispose of its motion, Defendant is correct that if Defendant's business has between fifteen (15) and one hundred (100) employees, combined compensatory and punitive damages are limited to $50,000.   42 U.S.C. § 1981a(b)(3)(A).   However, the argument for the proposition that Prince George's County Code does not permit punitive damages for employment discrimination is incorrect.   Defendant's citation to Md. Code Ann., State Gov't § 1203(d) does state that punitive damages may not be awarded, but only applies to an employer located in Baltimore County.   Section 1202 – which provides a private cause of action for those located in Prince George's County – is silent on the matter of punitive damages.   The County Code does not limit damages that can be awarded in a civil action, only those awards given by the County's Human Relations Commission.   Prince George's Cnty. Code § 2-195.01. The Court of Special Appeals of Maryland, in interpreting the meaning of § 1202 found that it permitted unlimited money damages, subject only to the limits of the state common law. *Edgewood Mgmt. Corp. v. Jackson*, 212 Md.App. 177, 227-28 (2013); *Shabazz v. Bob Evans Farms, Inc.*, 163 Md.App. 602, 638-39 (2005).

Finally, Defendant fails to recognize that the standards for punitive damages differ between state and federal law.

Defendant argues that Plaintiff must demonstrate "actual malice" to support her claim of punitive damages. That may be so under Maryland law, *see Hanna v. Emergency Medicine Assocs., P.A.*, 77 Md.App. 595, 611 (1989), but under federal law, a plaintiff can recover punitive damages if she can demonstrate that her employer "engaged in a discriminatory practice or discriminatory practices with malice *or with reckless indifference* to the federally protected rights of an aggrieved individual," 42 U.S.C. § 1981a(b)(1) (emphasis added).

## V.  Conclusion

For the foregoing reasons, Defendant's motion to dismiss will be granted in part and denied in part. A separate order will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge
